UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Reverend Franklin C. Reaves, Ph.D., | ) C/A No.: 4:10-3234-TLW-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Report and Recommendation |
| | ) |
| Sherry R. Rhodes, individually and in her official capacity as Clerk of Court for Marion County; Mark W. Richardson, individually and in his official capacity as Sheriff of Marion County; Levon Nichols, individually and in his official capacity as Deputy Sheriff of Marion County, *aka Levern Nichols*; Albert Woodberry, individually and in his official capacity as Deputy Sheriff of Marion County; Mitche McCaskill, individually and in his official capacity as Deputy Sheriff of Marion County; C.W. Johnson, individually and in his official capacity as Marion County Jailor; Tim Harper, individually and in his official capacity as County Administrator; John Q. Atkinson, individually and in his official capacity as a member of Marion County Council; Eloise W. Rogers, individually and in her official capacity as a member of Marion County Council; Tom Shaw, individually and in his official capacity as a member of Marion County Council; Allen Floyd, individually and in his official capacity as a member of Marion County Council; Milton Troy, individually and in his official capacity as a member of Marion County Council; Pearly Britt, individually and in her official capacity as a member of Marion County Council; Elista H. Smith, individually and in her official capacity as a member of Marion County Council; A. E. Morehead, individually and in his official capacity as Family Court Judge, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |
| _____ | ) |

      This is a civil action filed *pro se* by Reverend Franklin C. Reaves, Ph.D. (Plaintiff) against

the Clerk of Court for Marion County, South Carolina, the Sheriff of Marion County and three of

1

his deputies, the Marion County Jailer,[1] the Marion County Administrator, seven members of the Marion County Council, and a Family Court Judge of South Carolina's Twelfth Judicial Circuit (comprising Marion and Florence Counties) in Florence, South Carolina. Plaintiff has filed an Application to Proceed *in forma pauperis*.[2] The case is presently before the undersigned United States Magistrate Judge for report and recommendation following pre-service review. *See* 28 U.S.C. § 1915(e)(2)(B); *In Re Prison Litigation Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997)(pleadings by non-prisoners should also be screened).

Plaintiff alleges that the instant action "arises out of Defendants' conspiracy to commit fraud upon [Plaintiff], in order to deprive him of his secured protected Constitution to liberty and property without Due Process of Law." ECF No. 1, p. 2. Plaintiff alleges the following "causes of action":

> (1) violation 42 U.S.C. Section 1983 (due process and equal protection clauses),[3] (2) violation of 42 U.S.C. Section 1985(3),[4] (3) fraud by omission, commission, and

---

[1] Plaintiff's Complaint uses the spelling "jailor" which is a less preferred variant of "jailer." *See* http://www.merriam-webster.com/dictionary/jailer?show=0&t=1300741344.

[2] Pursuant to 28 U.S.C. §636(b)(1), and D.S.C. Civ. R. 73.02(B)(2)(b) and (e), the assigned United States Magistrate Judge is authorized to review all motions for leave to proceed *in forma pauperis* and all pretrial proceedings involving litigation by individuals proceeding *pro se,* and to submit findings and recommendations to the District Court.

[3] Not itself a source of substantive rights, § 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by "person(s)" acting "under color of state law." *See Jennings v. Davis*, 476 F.2d 1271 (8th Cir. 1973). The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *See McKnight v. Rees*, 88 F.3d 417(6th Cir. 1996). To state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: (1) individual defendant(s) deprived him of a federal right, and (2) did so under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *see Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980).

[4] Section 1985(3) historically was intended to encompass only those conspiracies motivated by animus against the kind of classes of individuals Congress was trying to protect when it enacted the Civil Rights Act, namely, those classes of individuals discriminated against based

>non[-]disclosure, (4) common law conspiracy, (5) negligently infliction of physical injury, (6) negligently infliction of emotional distress, (7) intentional infliction of emotional distress, (8) coercion, (9) contempt of court, (10) defamation of character, (11) malicious prosecution, (12) unlawful arrest, (13) false imprisonment, and (14) cruel and unusual punishment, and (15) falsification of records.

ECF No. 1, p. 2.

## *Pro Se* and *In Forma Pauperis* Review

Under established local procedure in this judicial district, a careful review has been made of the *pro se* complaint pursuant to the procedural provisions of 28 U.S.C. § 1915. This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992);

---

upon race, color, or national origin. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (finding that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" to state a cause of action under 42 U.S.C. §1985).

>In *Simmons v. Poe*, 47 F.3d 1370 (4th Cir. 1995), the Fourth Circuit observed that:
>
>The law is well settled that to establish a sufficient cause of action for "conspiracy to deny equal protection of the laws" under section 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

47 F.3d at 1376 (citing *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985)). Mere conclusory allegation of a conspiracy will not be sufficient to present a claim under § 1985. *Id.* at 1377. Section 1985(3) also requires that a conspiracy must be entered into by "persons." *Boling v. National Zinc Co.*, 435 F. Supp. 18, 22 (N.D.Ok. 1976). The analysis of the word "person" is the same under § 1983 and § 1985. *Dorsett v. N.J. State Police*, C/A. No. 04-CV-5652 (WJM), 2007 U.S. Dist. LEXIS 10512 at *9 (D.N.J. 2007). The United States Supreme Court has not extended the reach of §1985 to classifications based upon a characteristic other than race. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269-70 (1993)(declining to extend the class of individuals covered under §1985 to women seeking an abortion). However, the Fourth Circuit has determined that §1985 extends to religious discrimination as well. *See Ward v. Conner*, 657 F.2d 45, 49 (4th Cir. 1981)(finding Plaintiff had asserted a viable complaint under §1985 for religious discrimination).

3

*Neitzke v. Williams*, 490 U.S. 319 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995) (en banc); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

The Complaint has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A finding of frivolousness can be made where the complaint "lacks an arguable basis either in law or in fact." *Denton*, 504 U.S. at 31. Hence, under § 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte*. *Neitzke*, 490 U.S. 319; *Allison v. Kyle*, 66 F.3d 71 (5th Cir. 1995).

This Court is required to liberally construe *pro se* complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, *Id.*; *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Cruz v. Beto*, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. *Erickson*, 551 U.S. at 93 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v.*

*Iqbal*, 129 S. Ct. 1937, 1953 (2009)(outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions").  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## Background

Plaintiff alleges that, on March 22, 2010, he was pursued, stopped and arrested, without probable cause, by Defendants Nichols and Woodberry, deputy sheriffs of the Marion County Sheriff's Department (MCSD).  Plaintiff alleges that Defendant Nichols "without [sic] excessive force, slammed [Plaintiff] against [Plaintiff's] vehicle, causing both physical bodily and mentally harm, yelling 'I have a bench warrant for your arrest for failing to make child support payment.'" ECF No. 1, p. 6.  Plaintiff alleges that Defendant Nichols then "put handcuffs, very tight on" [Plaintiff], placed him in the MCSD vehicle "without Mirandizing him," "never served [Plaintiff] with the alleged bench warrant," "never told [Plaintiff] that he was under arrest," and took Plaintiff to the Marion County Detention Center (MCDC) for booking.  ECF No. 1, p. 6.

At the MCDC, Plaintiff alleges that he "was placed and locked in a jail cell with nine (9) other people, without being read, served, or viewing an alleged bench warrant for failure to make child support payments," and that, "while in the Marion County Detention Center, [Plaintiff] was denied his prescription drugs." ECF No. 1, p. 7.  Plaintiff alleges that, when he was booked into the

5

jail, he was served with "Uniformed Traffic Violation Ticket # 43420 EX" by Defendant McCaskill, who later came to Plaintiff's cell and "asked him to give the Uniformed Traffic Violation Ticket # 43420 back, because he was going to write another ticket." ECF No. 1, p. 7.  Plaintiff alleges that, when he refused to give the traffic ticket back to Defendant McCaskill, Defendant McCaskill "went to a Magistrate Judge and secured an Arrest Warrant # M-395354, and served it upon [Plaintiff]" and Plaintiff "was placed on a $5000 bond."   Plaintiff alleges that Defendant McCaskill "had [Plaintiff's] vehicle impounded . . . at a cost of $230, without his consent, or opportunity for him to have someone come and get his vehicle."  ECF No. 1, p. 8.

Plaintiff alleges that "the Marion County Sheriff Department took [him] to Florence, South Carolina, to the Florence County Family Court, to appear before the Honorable A. E. Morehead, Family Court Judge, without service of notice, or change of venue, since the arrest to[ok] place within the corporate city limits of the City of Marion, South Carolina."  ECF No. 1, p. 8.  Plaintiff alleges that "the Florence County Family Court never had jurisdiction of [Plaintiff]" and that "[Judge] Morehead had no jurisdiction of [Plaintiff], and therefore, no authority to order him to pay $4,725 to the Marion County Clerk of Court."  ECF No. 1, p. 8.

Plaintiff alleges that, when he was released on March 23, 2010, he "requested a copy of the bench warrant that was alleged used to make his arrest" and "was told that the Marion County Sheriff Department did not have a copy of an arrest warrant for [Plaintiff] and that he had to go to the Marion County Clerk of Court Office."  ECF No. 1, p. 9.  Plaintiff alleges that when he and his daughter arrived at the Marion County Clerk of Court's Office, Defendant "Rhodes told them that there was no copy of a bench warrant in the Marion County Clerk Office, and that [Plaintiff] would have to come back to the Marion County Sheriff Department on March 24, 2010 to get a copy of the

alleged bench warrant alleged used to arrest [Plaintiff]." Plaintiff alleges that "there is no record of a valid bench warrant issued in this case." ECF No. 1, p. 9.

> Plaintiff alleges that:
>
> the Florence County Family Court allowed Rhodes' improper Rule to Show cause, although the 'Proof of Service' was never served upon [Plaintiff]. The only explanation is that the court discriminated against [Plaintiff] because of his race and gender. By depriving [Plaintiff] of his rights to equal protection and affording only the white female Rhodes' her rights to equal protection, Marion County insinuated itself into the conspiracy and metamorphosed the individual actors into State actions. Acting under the color of law, Defendants worked a denial of [Plaintiff's] rights, privileges, or immunities secured by the United States Constitution or by Federal law and guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, to wit, they sought and got a court order based on their misrepresentations.

ECF No. 1, p. 10.

> Plaintiff's Complaint also alleges "For a First Cause of Action":
>
> the conspiratorial purpose was financial. On or around 3, April 2009 the first step in the conspiracy was taken by [Defendant] Rhodes . . . when she decided to file and sign a Rule to Show cause of that date. . . . Rhodes was perpetrating a fraud upon the court which if believed by the court would work a contempt of court upon [Plaintiff]. Rhodes never served the Rule to Show cause upon [Plaintiff]. Since Rhodes' misrepresentations were persuasive, [Plaintiff] was found in contempt of a court order for failure to make child support payments as ordered by the court, and was required to pay $4,725, or spend six (6) months in jail. By Rhodes' misrepresentations to the Marion County Family Court, that [Plaintiff] had failed to obey a court order to make child support payments, without jurisdiction of [Plaintiff], it is alleged that the Family Court Judge issued a bench warrant for [Plaintiff's] arrest. The Marion County Sheriff Department conspired with Rhodes to deceive [Plaintiff] of his liberty and property. Mark Richardson . . . authorized Levern Nichols, Marion County Deputy Sheriff, to serve [Plaintiff] with the alleged bench warrant issued by a Marion County Family Court Judge, without jurisdiction of [Plaintiff].

ECF No. 1, p. 12.

Plaintiff alleges that, on March 22, 2010, he "violate[d] no traffic laws within the corporate city limits of the City of Marion, South Carolina" and that "[Defendant] Woodberry was never

7

certified by the South Carolina Criminal Justice Academy as a law enforcement officer in the State of South Carolina"[5] and "was not authorized [by] the State of South Carolina law to participate in directing the public or in making an arrest S.C. Code of Law Section 23-23-40." ECF No. 1, p. 12. Plaintiff alleges that Defendant Woodberry "breached the laws of the State of South Carolina, and participated in the pursuit in a Marion County Sheriff Department vehicle." "Mark Richardson, by swearing under the pains and penalties of perjury that Albert Woodberry was a certified Class III officer in a deposition taken on April 5, 2010, while knowing that he was not certified by the South carolina Academy of Criminal Justice." ECF No. 1, p. 13.

Plaintiff alleges that Defendant McCaskill "came upon the scene after Levern Nichols and Albert Woodberry had stop [Plaintiff] at Liberty and Gregg Streets," "never activated a blue light flashing in pursuit of [Plaintiff]," "never saw a blue light on in a pursuit of [Plaintiff]," and "by writing Uniformed Traffic Ticket # 43420 EX for failing to stop for a blue light which he never saw, conspired with Rhodes to deceive the court." As to Defendant Mccaskill's alleged request to Plaintiff to return the traffic ticket, Plaintiff alleges that "the only explanation is that McCaskill knew that Uniformed Traffic Ticket # 43420 . . . was unlawful, and without authority of law" and that "MaCaskill falsified the information in the Arrest Warrant # 395354," "perpetrat[ed] a fraud upon the court," and "participated in the conspiracy to deprive [Plaintiff] of his liberty and property." ECF No. 1, p. 14.

Plaintiff alleges that "the scheme of the conspiracy was (1) to declare there was a court order for child support, (2) to misrepresent the facts, and (3) to persuade the court by improper Rule to

---

[5] Plaintiff's Complaint makes a similar claim against Defendant Nichols "whom the South Carolina Criminal Justice Academy has no record that he was trained or certified as a law enforcement officer in the state of South Carolina." *See* ECF No. 1, p. 3.

Show Cause, which ultimately caused [Plaintiff] to pay $4,725, which have been paid. Rhodes' intent was to permanently deprive [Plaintiff] of his liberty and property. . . . The misrepresentations were deliberate and were designed to produce a judgment that was favorable to Rhodes." ECF No. 1, p. 15.

Plaintiff's Complaint also alleges "For a Second Cause of Action: Fraud By Omission," that "when Rhodes signed and countersigned the Rule to Show Cause which she knew to be neither true nor accurate, and then overzealously opposed [Plaintiff's] North Carolina divorce decree from a North Carolina Superior Court, which would prove both her knowledge and intentional misrepresentations, they were attempting to defraud [Plaintiff] by omission. ECF No. 1, p. 16-17. For a "Third Cause of Action: Negligent Infliction of Emotional Distress," Plaintiff alleges that "Defendants had a continually negligently inflicted emotional distress on the Plaintiff. The Defendants had a continuing affirmative duty to perform their duties in such a manner as not to inflict emotional distress on [Plaintiff]. The Defendants breached their duties to [Plaintiff]." ECF No 1., p. 19. Plaintiff alleges that he "suffered not only physical symptomologies but also, as consequence of the physical injury, mentally by Defendants' breach of duty" . . . "such as severe, continuous headaches and pains in his extremities, weight gain, pain, anguish, severe emotional trauma, embarrassment, and humiliation." ECF No. 1, p. 19.[6] "For a Fourth Cause of Action: Intentional Infliction of Emotional Distress," Plaintiff alleges that "the Defendants intentionally and deliberately inflicted emotional distress on [Plaintiff] by interfering with his civil rights and

---

[6] Negligence, in general, is not actionable under 42 U.S.C. § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328-36 & n. 3 (1986); *Davidson v. Cannon*, 474 U.S. 344, 345-48 (1986); *Ruefly v. Landon*, 825 F.2d 792, 793-94 (4th Cir. 1987); *Pink v. Lester*, 52 F.3d 73, 78 (4th Cir. 1995).

conspiring against him, thereby destroying his trust in the judicial system. Defendants conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community." ECF No. 1, p. 19.

Plaintiff seeks monetary damages in the amount of $250,000,000.00, plus costs and attorney's fees, and such other relief as the court deems just, fair, and appropriate. ECF No. 1, p. 20.

## **Discussion**

Defendant Sherry R. Rhodes, Clerk of Court, is entitled to absolute quasi-judicial immunity from the claims raised against her by Plaintiff in this case. Defendant A. E. Morehead, Family Court Judge of the Twelfth Judicial Circuit of South Carolina (comprising Florence and Marion Counties), is entitled to absolute judicial immunity from the claims raised against him by Plaintiff in this case. Judicial immunity extends to judicial officers for judicial acts taken within the court's subject matter jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Absolute quasi-judicial immunity extends to non-judicial officers "performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994); *see also Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir. 1980); *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994). This immunity extends to subordinate officials for "functions that are more administrative in character [that] have been undertaken pursuant to the [judge's] explicit direction." *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992). The basis for affording non-judicial officials absolute immunity is to prevent them from becoming a "lightning rod for harassing litigation aimed at judicial orders" which would inevitably result in tension between the courts and those officials duty-bound to enforce the courts' orders and assist

in the courts' business. *Valdez v. City and County of Denver*, 878 F.2d 1285, 1289 (10th Cir. 1989)(internal quotes omitted). Absolute immunity, therefore, extends to protect, among others, clerks of court, law enforcement officers, and others who enforce court orders. *See, e.g., Foster v. Walsh*, 864 F.2d 416, 417-18 (6th Cir. 1988)(clerk of court absolutely immune for issuing erroneous warrant pursuant to court's order); *Scott v. Dixon*, 720 F.2d 1542, 1546-47 (11th Cir. 1983)(clerk of court absolutely immune for issuance of warrant).

As noted above, Plaintiff's claims in the instant case arise out of the issuance and execution of a rule to show cause and a bench warrant. The rule to show cause and bench warrant stemmed from Plaintiff's alleged failure to comply with a court order directing Plaintiff to pay monthly alimony or support through the clerk's office. Consequently, Defendant Rhodes was compelled by Rule 24 of the South Carolina Family Court rules to conduct monthly reviews of alimony accounts and to issue rules to show cause whenever an account appeared to be in arrears. See Rule 24(b), SCFCR. Additionally, the bench warrant on which Plaintiff was arrested arose out of Plaintiff's alleged failure to comply with a rule to show cause that was ordered by a Family Court judge and issued at the judge's direction. Accordingly, Defendant Rhodes is entitled to absolute quasi-judicial immunity from the claims raised by Plaintiff and should be dismissed from this action.

Plaintiff's Complaint in this case is also subject to summary dismissal, under 28 U.S.C. § 1915(e)(2)(B)(ii),(iii) as to Defendant A. E. Morehead, Judge of the Family Court of the Twelfth Judicial Circuit, in Florence, South Carolina, because Judge Morehead has absolute judicial immunity from Plaintiff's claims. The Supreme Court of South Carolina, the Court of Appeals of South Carolina, Courts of General Sessions, Courts of Common Pleas, Family Courts, Probate Courts, Magistrate's Courts, and Municipal Courts are in a unified judicial system. *See* S.C.

CONST. art. V, § 1; *City of Pickens v. Schmitz*, 297 S.C. 253, 376 S.E.2d 271 (S.C. 1989); *Cort Industries Corp. v. Swirl, Inc.*, 264 S.C. 142, 213 S.E.2d 445 (S.C. 1975). As South Carolina Family Court Judges are part of the State of South Carolina's unified judicial system, they have absolute immunity from claims for damages arising out of their judicial actions. *See Mireles v. Waco*, 502 U.S. 9 (1991); *Stump v. Sparkman*, 435 U.S. 349, 351-364 (1978); *Pressly v. Gregory*, 831 F.2d 514, 517 (4th Cir. 1987); *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985)("It has long been settled that a judge is absolutely immune from a claim for damages arising out of his judicial actions"). *See also Siegert v. Gilley*, 500 U.S. 226, 231 (1991)(immunity presents a threshold question which should be resolved before discovery is even allowed); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)(absolute immunity "is an immunity from suit rather than a mere defense to liability"). "Judges and magistrates are absolutely immune from liability for damages for acts performed within their judicial jurisdiction. This immunity not only includes damage actions under 42 U.S.C. §§ 1983, 1985 and 1986, but also suits under other civil rights legislation." *Lundt v. Hodges*, 627 F. Supp. 373, 375 (N.D. Ia. 1985)(citing *Stump*, 435 U.S. at 364; *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967) abrogated on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). Plaintiff's Complaint against Defendant Morehead results from acts taken in his judicial capacity within the jurisdiction of South Carolina's Twelfth Judicial Family Court, *i.e.* Florence and Marion Counties, thus it is barred by Defendant Morehead's absolute judicial immunity. Accordingly, Defendant Morehead should be dismissed from this action.

The Complaint filed in this case is also subject to summary dismissal under 28 U.S.C. § 1915(e)(2)(B)(i),(ii) as to Defendants Tim Harper; John Q. Atkinson; Eloise W. Rogers; Tom Shaw; Allen Floyd; Milton Troy; Pearly Britt; and Elista H. Smith, who are all alleged to be members of

12

Marion County Council. The Complaint contains no allegations of any kind, much less of specific wrongdoing against these Defendants. Under 28 U.S.C. § 1915(e)(2)(B)(i), this Court should dismiss an action filed *in forma pauperis* by a plaintiff which is "frivolous or malicious." Thus, Plaintiff's Complaint not only fails to state a claim on which relief can be granted, it is "frivolous"as to these Defendants. *See Cochran v. Morris*, 73 F.2d 1310 (4th Cir. 1996)(statute allowing dismissal of *in forma pauperis* claims encompasses complaints that are either legally or factually baseless); *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 389n. 2 (4th Cir. 1990)(dismissal proper where there were no allegations to support claim); *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999); *see also Kuhn v. Milwaukee County*, No. 02-3522, 59 Fed. Appx. 148, *2 (7th Cir., Feb. 18, 2003). In the absence of substantive allegations of wrongdoing against Defendants Harper, Atkinson, Rogers, Shaw, Floyd, Troy, Britt, and Smith, there is nothing from which this Court can liberally construe any other type of viable cause of action against these individuals arising from the Complaint. It is well settled that federal courts performing their duties of construing *pro se* pleadings are not required to be "mind readers" or "advocates" for *pro se* litigants. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Accordingly, Defendants Tim Harper; John Q. Atkinson; Eloise W. Rogers; Tom Shaw; Allen Floyd; Milton Troy; Pearly Britt; and Elista H. Smith should be dismissed from this action.

### **Recommendation**

It is recommended that the Complaint be partially dismissed, without prejudice and without issuance and service of process, as to the following Defendants: Sherry R. Rhodes, Tim Harper, John Q. Atkinson, Eloise W. Rogers, Tom Shaw, Allen Floyd, Milton Troy, Pearly Britt, Elista H. Smith,

and A.E. Morehead. *See Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Brown v. Briscoe*, 998 F.2d 201 (4th Cir. 1993); *Todd v. Baskerville*, 712 F.2d 70. (4th Cir. 1983); *see also* 28 U.S.C. § 1915(e)(2)(B). The Complaint should be served on the following Defendants: Mark W. Richardson, Levon Nichols *also known as Levern Nichols*, Albert Woodberry, Mitche McCaskill, and C.W. Johnson.

Plaintiff's attention is directed to the important notice on the next page.

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

May 19, 2011  
Florence, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 2317
> Florence, South Carolina 29503

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).